## JOSEPH G. TOWLE, *Adm'r, versus* JAMES LARRABEE.

A promissory note, made on the Lord's day, given and received as the consideration for articles purchased on that day, is void, the act done being in violation of law.

ASSUMPSIT upon a promissory note, dated Feb. 25, 1831, given by the defendant to the intestate, for the sum of fifty dollars and interest.

The defendant, with the general issue, filed a brief statement, wherein he alleged, that the note was made and delivered by the defendant to the plaintiff's intestate on the Lord's day between the midnight preceding and the sunsetting of that day ; that the note was given as the consideration for a horse, sold by the intestate to the defendant ; and that the contract of sale was entered into and executed, and the horse delivered, on that day, between the hours aforesaid.

The parties agreed, that the facts were truly stated in the brief statement, and submitted the case to the decision of the Court thereupon.

*Jameson*, for the plaintiff, contended that the action could be maintained. Here the consideration for the note was legal. The defendant has had the horse, and has not paid for it. The act only is illegal, and the only penalty is the fine. The contract, being for a good and legal consideration, is binding. Such was the decision of the Court in Massachusetts before the separation, in *Geer* v. *Putnam*, 10 Mass. R. 312. The enactment of the statute in this State in the same words, must be considered as enacting it with the judicial construction

put upon it. That case has been sustained by a later decision. *Clap* v. *Smith,* 16 Pick. 247 ; See also 1 N. H. Rep. 266 ; 2 N. H. Rep, 202 ; 1 Cowan, 76 and note.

*Bourne,* for the defendant, said that he should contend, that the note was void, and that the case of *Geer* v. *Putnam,* which had been relied upon for the plaintiff, was not law. That case was contrary to decisions of the same Court, on the subject of illegal contracts, and to the decisions directly in point in England and in the United States. He cited *Clough* v. *Davis,* 9 N. H. Rep. 500 ; *Wight* v. *Geer,* 1 Root, 274 ; *Fox* v. *Abel,* 2 Conn. R. 541 ; *Kepner* v. *Keefer,* 6 Watts, 231 ; *Northrup* v. *Foot,* 14 Wend. 248 ; *Lyon* v. *Strong,* 6 Verm. R. 219 ; Story on Con. § 121 and note ; *Williams* v. *Paul,* 19 Com. L. Rep. 192 ; *Norton* v. *Powell,* 43 Com. L. Rep. 31 ; *Smith* v. *Sparrow,* 13 Com. L. Rep. 353 ; 12 Com. L. Rep. 253 ; Amer. Jurist No. 26, 381 ; Amer. Jurist, No. 45, 10, 11.

The principle, that when a statute has once received a judicial construction, it is to be always received as law, has been frequently departed from.    Several cases were mentioned, where other decisions understandingly made, were directly opposed. 1 Mass. R. 129, in 4 Greenl. 143 ; 12 Mass R. 337, in 1 Greenl. 110 ; 3 Pick. 96, in 8 Pick. 187 and in 6 Greenl. 307 ; 5 Pick. 120, in 14 Maine R. 348 ; 9 Mass. R. 496, in 7 Metc. 500 ; 6 Mass. R. 347, in 23 Maine R. 527.

He contended that there was nothing in the case, *Geer* v. *Putnam,* which entitled it to respect.

The contract of sale was illegal and void, and therefore the note is without consideration and void.   Chitty on Con. 419 ; Long on Sales, 133, 144, 145 ; 4 S. & R. 159 ; 1 Binney, 118 ; 3 B. & C. 232 ; 5 B. & Cr. 406 ; 17 Mass. R. 260 ; 22 Maine R. 488 ; 14 Maine R. 404 ; 4 N. H. Rep. 153.

The opinion of the Court was by

SHEPLEY J. — The promissory note, upon which this suit was instituted, was made on the Lord's day, for the purchase money

to be paid for a horse sold and delivered on the same day before sunset.

The statute then provided " that no person or persons whatsoever shall keep open his, her or their shop, warehouse, or workhouse, nor shall upon land or water do any manner of labor, business, or work, works of necessity and charity only excepted," " on the Lord's day, or any part thereof, upon penalty of a sum not exceeding six dollars and sixty-six cents, nor less than four dollars for each offence." Stat. 1821, c. 9, § 2. This language is so explicit, that any doubt of the intention to prohibit trade and business of every description, which could not be a work of necessity or charity, on that day, would seem to be precluded. It is however insisted, that it had received a construction in Massachusetts, which must be presumed to have been adopted by the legislature on its reenactment in this State. Such a rule of construction has been admitted in several decided cases; and if that language had been commented upon and judicially explained, so that the legislature could have known the meaning assigned to any word, or sentence, such rule of construction should be allowed to prevail in this case. But the cases cited do not exhibit 'any exposition of the meaning of any word, line, or sentence, so that it could have been understood and acted upon by our legislature. The report of the case of *Geer* v. *Putnam,* 10. Mass. R. 312, states, that the plea alleged, that the note was made on the Lord's day, to which there was a demurer. The case came before the court upon a writ of error, and the judgment in favor of the original plaintiff was affirmed. The plea does not appear by the report to have contained any allegation, that the note was made on that day before sunset; and without it, the plea would be bad. The Chief Justice is reported to have said, that he recollected a case, in which the court held a contract made on that day to be good; if such unknown case could be received as an authority here, there is no intimation, that any explanation of the language of the statute was made in it. These cases were the only source of information for our legislature, when the act of February 5, 1821, was passed, and

it is quite obvious, that it could derive therefrom no knowledge of any peculiar meaning engrafted upon any portion of the language by a judicial exposition. Since that time, there has been a decision in the case of *Clap* v. *Smith,* 16 Pick. 247, that the annexation of a schedule of property to complete a sale was not a void act, because done on Sunday. In that case, however, there does not appear to have been any attempt to explain the language of the statute and to show, that it did not prohibit such a transaction ; and it cannot therefore operate to convince the judgment of any other tribunal. Several decisions have been made in the English courts upon the construction of the statute of 29 Car. 2, c. 7, respecting the observance of the Lord's day, which provides, that no tradesman, artificer, workman, laborer, or other person whatsoever, shall do or exercise any worldly labor, or business, or work of their *ordinary callings* on Sunday, works of necessity and charity only excepted.

In the case of *Drury* v. *Defontaine,* 1 Taunt. 131, it was decided, that the sale of a horse on Sunday, at private sale, by one whose business it was to sell horses by auction on commission, was not an illegal act, because it was not done within his ordinary calling.

In the case of *Bloxsome* v. *Williams,* 3 B. & C. 232, it was decided, that one, who had bargained for the sale of a horse on Sunday, and who delivered him and received his pay on the following Tuesday, was bound by the contract of warranty.

In the case of *Fennel* v. *Ridler,* 5 B. &. C. 406, it was decided, that one, who in the exercise of his ordinary calling purchased a horse on Sunday, could not maintain an action upon the contract of warranty. Mr. Justice Bayley very properly said, " this statute is entitled to such a construction, as will promote the ends, for which it was passed, that it applies to private as well as public conduct, and that the purchase by the plaintiff was within the mischief intended to be suppressed, and within the words made use of to suppress it."

In the case of *Smith* v. *Sparrow*, 4 Bing. 84, it was decided, that an action for breach of contract in not accepting merchandise sold on Sunday could not be maintained. Best C. J. said, "unless it be permitted to a party to profit by a contract in defiance of the laws of the country, the plaintiff cannot recover."

Statutes of a similar character have been made in several of the United States, and it is believed, that they have received a similar construction, unless that of Massachusetts must be excepted. The statute of New Hampshire appears to have been a copy of the English with the omission of the word, "worldly," and the substitution of the word, "secular," for the word, "ordinary." In the case of *Frost* v. *Hill*, 4 N. H. Rep. 157, Richardson C. J. says, "It will be perceived, that our present statute omits the word "ordinary" and substitutes the word "secular," so that any work, labor, or business, relating to secular concerns, works of necessity and mercy excepted, seems to be within the prohibition of the statute. And it is believed the statute has been so understood always by the community in general, and we cannot doubt, that this was the intention of the legislature."

In Vermont it has been decided, that an action brought upon a warranty made on the sale of a horse on the Lord's day, could not be maintained. *Lyon* v. *Strong*, 6 Verm. R. 219.

In Connecticut contracts made on the Lord's day have been decided to be invalid. *Wight* v. *Geer*, 1 Root, 474; *Fox* v. *Abel*, 2 Conn. R. 584.

In New York, a demand made on that day for the delivery of personal property was held to be inoperative. *Delameter* v. *Miller*, 1 Cow. 75. So an award made and published on that day was held to be void. *Story* v. *Elliot*, 8 Cow. 27.

In the case of *Northrup* v. *Foot*, 14 Wend. 248, it was decided, that an action on the case for deceit in the sale of a horse, made in Connecticut on that day, could not be maintained, it appearing, that the statute of that State provided, that no person or persons shall do any secular business, work, or labor on the Lord's day.

In the case of *Boynton* v. *Page*, 13 Wend. 425, it was decided, that the prohibitions of their own statute were directed against the exposure of commodities to sale on that day, and that they did not extend to mere private contracts; the language of their statute then being, that " no person shall expose to sale any wares, merchandise, fruit, herbs, goods, or chattels on Sunday, except meats, milk, and fish, which may be sold at any time before nine o'clock in the morning."

In Pennsylvania a contract made on the Lord's day was held to be void. *Kepner* v. *Keefer*, 6 Watts, 231.

If the language of the statute of this State be permitted to have a literal and fair exposition, it cannot be denied, that the transaction, upon which this action is founded, was a violation of law. And the law will not assist a party to enforce a contract made in violation of its provisions. There can be no excuse for any attempt to destroy, by a forced construction of the language, the effect of an enactment so suited to enable man to derive the benefit designed to be bestowed upon him by Providence, in the consecration of the Lord's day to the duty of doing good and of seeking endless happiness, in accordance with the precepts of the gospel of our Lord Jesus Christ.

*Plaintiff nonsuit.*