# N. Y. SUPERIOR COURT.

## J. Nelson Luckey agt. Thomas Gannon.

It is now well settled that an action can be maintained for the *conversion of a chose in action* which has been *pledged as security for a debt.*

An action to *redeem* is not the only remedy; and where the pledgee has wrongfully disposed of the pledged property, so as to put it out of his power to deliver it, or where upon *payment of the debt* for which it was pledged, and demand for its return, he refuses to reiurn it, it is a *conversion* for which an action will lie.

The evidence in this case of the payment of the debt for which the insurance polices were pledged to the defendant and of the demand and refusal to return them to the plaintiff, was undisputed, leaving nothing for the jury to determine, and the direction to ffnd for the plaintiff was correct.

*General Term, January,* 1869.

Action for the conversion of two policies of insurance.

The complaint alleged that in August, 1866, the plaintiff procured two polices of insurance—one from the State Insurance Company of Jersey City, and the other from the Security Insurance Company of Philadelphia—upon property consisting of a rosin oil factory in Brooklyn, and the machinery and other property therein, each for the amount of $625. That such policies provided that the loss, if any, should be payable to the defendant, to the extent of any indebtedness which, at the time thereof, should be owing to him *from the plaintiff.* The complaint further alleged, that at the time of the insurance, the defendant was in the employment of the plaintiff, and the loss was made payable to him, as security for any indebtedness of the plaintiff therefor; and that it was agreed that the policies should be returned to the plaintiff on demand, and on payment or tender of any amount which he should then owe the defendant; and that if at the time any loss should occur, nothing should be owing by the plaintiff to the defendant, then the policies should be delivered up to the plaintiff.

Luckey agt. Gannon.

It was further alleged, that in January, 1867, the property covered by the polices was destroyed by fire; that in March following, the insurance companies adjusted the loss under each of the policies at $237.50, which sums the companies were willing to pay, upon production and cancellation of the policies. That *since* the loss and adjustment, the plaintiff has demanded the policies of the defendant, and offered to pay him any sum which might be found due him from the plaintiff, but the defendant refused. That although the plaintiff has offered to pay, &c., yet, that at the time of the loss, there was not, nor has there since been, anything due from the plaintiff to the defendant.

The answer of the defendant averred that the plaintiff was indebted to him, and has been since the time stated in the complaint, in a sum exceeding $475. That the plaintiff has not offered to pay any sum of money since the delivery of the policies. The defendant denied the conversion of the polices, and further alleged that the plaintiff was indebted to him in the sum of $1,300.

Upon the trial before a justice of this court, and a jury, the plaintiff testified *that at the time of the fire he did not owe the defendant anything, nor had he owed him anything since;* he once owed him about $250, *which he had paid him in full.* There was further evidence tending to show that the plaintiff was not indebted at the time of the fire, or since, to the defendant.

A general motion was made to dismiss the complaint without stating any ground therefor, which was denied·

The defendant testified to the sale of some worms to one Fisher, and the taking of his notes and of a chattel mortgage as security for the purchase-money; and gave other evidence tending to show that the loss under the insurance policies was made payable to the defendant as additional security for such notes. He was then asked: " Have you been paid your indebtedness arising out of this transaction ? " And he answered " No ; " and that there was still $1,300 due. That

neither before nor after the fire had he had any settlement with the plaintiff. That the plaintiff had neither paid nor *offered* to pay him anything.

All the evidence of an agreement by the plaintiff to pay the notes of Fisher was, on motion, stricken out by the court, and the defendant excepted.

There was other evidence that the defendant had not been paid. But it mostly referred to the non-payment of the Fisher notes, although some of the evidence left it uncertain which indebtedness was referred to.

At the close of the evidence, the court directed the jury to find a verdict for the plaintiff, and the defendant excepted.

A. J. PERRY, *for appellant, defendant.*
C. CONABLE, *for respondent, plaintiff.*

*By the court*, MONELL, J. The only issue in this case presented by the pleadings, was upon the nature and extent of the indebtedness for which the policies of insurance were intended as a security. The plaintiff claimed, and so alleged in his complaint, that at the time of the insurance, the defendant was in his employment, and that the loss was made payable to him, as expressed in the policies, in order to secure him for any indebtedness, that the plaintiff might owe him therefor, and for no other purpose whatever; and that it was then agreed, between the plaintiff and defendant, that such policies should be held by the defendant only for the purposes of such security, and should be returned to the plaintiff at any time when the plaintiff should demand the same, on payment or tender by the plaintiff of any amount he should then owe the defendant; and that if any loss should occur under the policies, and nothing should be owing by the plaintiff to the defendant, the policies should be delivered to the plaintiff, and all rights of the defendant released to the plaintiff.

These allegations, of the nature of the indebtedness intended to be secured, as well as the agreement between the parties in respect thereto, *was not denied in the answer.* The only allegations in the complaint negatived in the answer being those averring payment, or offer of payment, of the alleged indebtedness. So that the case, upon the pleadings, was narrowed to the single issue of payment or offer of payment of any indebtedness of the plaintiff to the defendant, growing out of the employment of the latter by the former. On the trial it was attempted to show, on the part of the defendant, that the insurance policies were intended to secure the payment of a certain chattel mortgage, given to the defendant by one Fisher, upon two copper worms, used in the distillation of rosin oil, to secure the payment of thirteen hundred dollars and upwards; and some evidence was furnished that the mortgage debt had not been paid. But the court, on motion, struck out all the evidence of an agreement on the part of the plaintiff to pay the debt of Fisher, probably on the ground that no such agreement had been set up in the answer; and also that the agreement set forth in the complaint was admitted by the answer.

I have examined the evidence furnished by the defendant, and cannot find any that is pertinent to the only issue presented by the pleadings. All the evidence relates to the non-payment of the debt due from Fisher, and was clearly inadmissible. As all evidence showing or tending to show that it was agreed or intended to secure the Fisher notes was excluded, it was immaterial, so far as the plaintiff's rights were concerned, whether such notes were paid or remained unpaid; and the evidence could not be made pertinent without an amendment of the answer.

Under this view of the case, there was nothing to go to the jury. The *debt* agreed to be secured by the transfer of the policies was admitted, and the evidence of the payment of *such* debt was not contradicted by the defendant, although he proved in general terms that the plaintiff had not paid

him.   Yet it is so evident that he referred to the Fisher
debt that it may safely be said that the plaintiff's evidence
was undisputed.   But were it otherwise, and the evidence
on the subject of payment, or on the other subject, of part-
nership between the plaintiff and Fisher, was conflicting,
the defendant should have called the attention of the court
to it, by a request to submit such questions to the jury;
and it is too late to raise the objection now, that the case
should have gone to them upon any of the conflicting evi-
dence in the case.

The only remaining question is, whether the plaintiff can
maintain an action for the conversion of the policies, and
that question was properly raised, I think, by the motion to
dismiss the complaint.

The policies were taken in the name of the plaintiff, and
contained a clause making the "loss, if any, payable to the
defendant."   Such words operated to give the defendant the
same rights and interests in the policies which he would have
had, if without such words, the policies had been assigned
to him with the assent of the insurers (*Grosvenor* agt. *Atlan-
tic Fire Insurance Co.*, 5 *Duer*, 517, *S. C.*, 17 *N. Y. R.*, 395;
*Ennis* agt. *Harmony Fire Insurance Co.*, 3 *Bosw.*, 516).   There
cannot be a doubt that the assignee, before payment of the
debt, could maintain an action upon the policies, for a loss
to the subject insured.   Before the Code an assignee could
not, in this state, have brought an action in his own name
(*Jessel* agt. *Williamsburgh Ins. Co.*, 3 *Hill*, 88).   It was
otherwise in some of the states (*Motley* agt. *Manufacturers'
Ins. Co.*, 29 *Maine*, 337), and is otherwise now in this state,
the Code having provided that the action shall be in the
name of the party in interest; and it has accordingly been
held that the person to whom the loss is made payable, can
sustain an action against the insurers (*Frink* agt. *Hampden
Ins. Co.*, 45 *Barb.*, 384).   It is equally clear, I think, that
after payment of the debt, the right of the assignee to sue,
if not gone entirely, could be taken from him by the

assignor, who upon discharging the debt is re-instated to all rights which he possessed before the assignment, not by subrogation, but by operation and force of the purpose of the assignment having been fully met and answered.

In the case of *Roberts* agt. *The Traders' Ins. Co.*, (17 *Wend.*, 531), the question was, whether after judgment in favor of an assignee against the insurers, and payment of the mortgage debt by the assignor, he was entitled to collect the judgment; and the court said, (*p.* 638) that the assignee took only a collateral interest in the policy, liable to be divested whenever the mortgage was paid, and that the payment of the mortgage had the effect to bring back to the mortgagor and assignor of the policy the interest which he had assigned, and of course the interest in the judgment which had been obtained upon the policies.

The cases cited, establish that upon payment of the debt, the assignor is restored to his interests, and may maintain an action upon the policies, or to compel a reassignment to himself, if that be necessary for the purpose of bringing suit.

That an action can be maintained for the conversion of a chose in action which has been pledged as a security for a debt, is now well settled (*Campell* agt. *Parker*, 9 *Bosw.*, 322; *Decker* agt. *Matthews*, 12 *N. Y. R.*, 313). An action to redeem is not the only remedy; and where the pledgee has wrongfully disposed of the pledged property, so as to put it out of his power to deliver it, or where, upon payment of the debt for which it was pleged and demand for its return, he refuses to return it, is a conversion for which an action will lie.

The evidence in this case of the payment of the debt for which the insurance policies were pleged, and of the demand and refusal to return them to the plaintiff, was undisputed, leaving, therefore, nothing for the jury.

The direction to find for the plaintiff was correct, and the judgment should be affirmed.

Jones and Fithian, JJ., concurred.